Argued March 14, affirmed April 9, rehearing denied May 28, 1929.

# LEWIS PANKEY *v.* OREGON, CALIFORNIA AND EASTERN RAILWAY CO.

(276 Pac. 277.)

For appellant there was a brief over the name of *Messrs. Oneill & Irwin.*

For respondent there was a brief and oral argument by *Mr. Henry E. Perkins* and *Mr. R. C. Groesbeck.*

McBRIDE, J.—This is a suit brought to charge the defendant substantially as a trustee of certain funds, which it is alleged defendant recovered in an action against the National Surety Company, and which plaintiff contends should equitably be paid over to him. The transactions leading up to the present suit cover several years and are substantially as follows:

In January, 1923, the Nettleton-Bruce-Eschbach Company entered into a contract with the Oregon, California and Eastern Railway Company to grade, construct and complete a roadbed, *et cetera,* from the north line of the southwest quarter of the southwest quarter of section 15, township 37 south, range 11½ east of the Willamette Meridian to Sprague River in the State of Oregon, and executed a bond with the National Surety Company, as surety, for the performance of said contract, which bond was conditioned as follows:

"That whereas, the above named principal has entered into a contract in writing, bearing date of February 20, 1922, with the said obligee for grading, construction, and completion of roadbed, with road crossing, ditches, etc., pertaining thereto for the Oregon, California and Eastern Railway Company from the north line of the southwest quarter of the southwest quarter of section 15, township 37 south range 11½ east W. M., to Sprague River, in the state of Oregon, which contract, plans and specifications are attached hereto and hereby referred to and made a part hereof. Now, therefore, if the above named principal, Nettleton-Bruce-Eschbach Company, a corporation, shall faithfully perform said contract according to the terms and conditions thereof, and shall pay all laborers, mechanics and materialmen for labor performed or material or pro-

visions furnished or supplied for, or at the instance of the contractor in carrying on the work covered by said contract, and to indemnify and save harmless the said obligee from all claims, demands, liens or causes of action for labor performed or materials or provisions supplied or furnished in the carrying on of the work covered by said contract, then this obligation to be null and void; otherwise to remain in full force and effect.''

Between April 29, 1923, and August 1, 1923, plaintiff sold and delivered to said Nettleton-Bruce-Eschbach Company, hay, beef and veal to be used, and which were used and consumed by the said company in the prosecution of said work in the aggregate of $3,486.25, upon which there was paid the sum of only $983.68, leaving due and unpaid the sum of $2,502.55 on August 1, 1923. On August 21, 1923, plaintiff filed his claim of lien on the road and improvements for the balance due on said account. No notice of the furnishing of said materials and supplies, or of the intent to furnish them was given to the railway company, and as to it the lien was void. On August 1, 1923, the Nettleton-Bruce-Eschbach Company abandoned the work, leaving it uncompleted, and owing to plaintiff the amount last stated. On December 7, 1923, the Oregon, California and Eastern Railway Company began an action in the United States District Court against the National Surety Company for breach of the bond, and on April 10, 1925, the Oregon, California and Eastern Railway Company recovered a judgment for $25,000.

On March 11, 1924, Pankey brought suit against the surety company in the Circuit Court of Klamath County to recover the balance of his account against the Nettleton-Bruce-Eschbach Company claiming

that the bond given by the surety company inured to his benefit. This case was decided against him in the Circuit Court and was appealed here where the decision of the lower court was affirmed: *Pankey* v. *National Surety Co.,* 115 Or. 648 (239 Pac. 808).

On December 11, 1925, plaintiff instituted the present suit against the railway company, claiming, in its claims for damages against the surety company, the failure of the Nettleton-Bruce-Eschbach Company to pay off plaintiff's claim, and suffering plaintiff's lien thereon to remain unsatisfied was pleaded as an element of said damage; that the amount thereof was considered and allowed in said recovery, and that the railway company, having recovered the amount of such lien as part of such damages, was equitably bound to account therefor and pay the same over to plaintiff.

There was a demurrer to the complaint, which, being sustained, plaintiff appealed to this court where the judgment was reversed and the case sent back for trial.

For a full statement of the present case and the holding of this court thereon on appeal from the ruling of the court on the demurrer, reference is made to the case of *Pankey* v. *Oregon, California & Eastern Ry. Co.,* 122 Or. 346 (255 Pac. 470).

When the case was remanded to the Circuit Court for Klamath County the defendant answered, admitting the timely filing of plaintiff's lien, but denying that it ever had any validity, and alleged that there was no showing by the lien, or otherwise, that the statutory five days' notice required of a materialman as a condition precedent to obtaining a valid lien had ever been served upon the railway company.

The principal matters in the answer, after admitting the recovery and judgment in the United States District Court of $25,000 damages on account of said bond, are as follows:

"That in consideration of immediate payment of said judgment, the railway company remitted the cost feature thereof; that the only issue tried in said cause upon oral testimony was the question of damages asserted by the railway company by reason of the non-completion of the construction contract of Nettleton-Bruce-Eschbach Company, upon which issue the railway company recovered the sum of $18,611.92. That all lien claims previously filed in Klamath County, Oregon, arising by reason of default of said contractor, were, by agreement of counsel, admitted in evidence by certified copy, the total amount thereof being $28,265.49, of which, in round numbers, $18,500.00 were asserted for labor. That by agreement of counsel labor claims only were deemed to have validity. Claims for material were refused consideration for the principal reason that, being filed under the mechanic's lien statutes of Oregon, there was no showing in any case that the statutory 5-day notice had been served upon the railway. That further agreement was made by counsel for the parties, that if the court (sitting without a jury) should find the issues for the railway company on the element of damages for non-completion of contract in the sum asserted, opposing counsel would admit the validity of sufficient of the labor claims to make the difference between $18,611.92, the amount asserted (and recovered) as non-completion damages, and the face of the bond. Such issues having been found in favor of the railway, judgment for the full sum of $25,000.00 was entered. That subsequent to the recovery and receipt of said judgment moneys in the sum of $25,000, the railway company applied said sum, together with other moneys, to the payment of obliga-

tions arising from the default of said contractor, Nettleton-Bruce-Eschbach Company, as follows:

"Costs remitted ........................$  700.00
Labor liens paid ...................... 20,600.00
Expended to complete contract ........ 18,611.92
Attorneys fees, Federal Court ......... 2,000.00
Attorneys fees, lien litigation .......... 2,000.00
Railway, trial expense ................. 750.00

$44,661.92

"From the foregoing it is apparent that the railway company has already expended approximately $20,000 more than it recovered. Defendant alleges that it never recovered any moneys on the Pankey claim, that it never had and does not now have any moneys in its possession as trustee or otherwise for Lewis Pankey."

■ Plaintiff replied, setting out his lien and the record thereof, but omitting to state that he had complied with Section 10191, Or. L., requiring a materialman to give notice of the fact that he was furnishing material and supplies to the contractor Nettleton-Bruce-Eschbach Company, and it is not contended that such notice was given. So it follows, as a matter of law, that the alleged lien was invalid and unenforceable against the railway company and that, if plaintiff has any rights here, they must rest upon an alleged estoppel, which, in substance, plaintiff postulates as follows: "Defendant claimed $25,000 from the surety company, and as a basis for such damages it pleaded, among other matters, that the Nettleton-Bruce-Eschbach Company had suffered liens to the amount of $25,654.94 to be filed against the railway company's property. My lien was one of those included in those which made up the railway company's aggregate of $25,654. It offered my liens in evidence and recovered a judgment of $25,000, the

extent of the bond, therefore it has recovered the amount of my claim and in equity should be compelled to pay it over to me." Of course the foregoing is not a quotation, but a summary of plaintiff's contention.

It is defective in this. The fact, that the Nettleton-Bruce-Eschbach Company suffered liens, defective or otherwise, to be filed, was only one element in the railway company's claim against the surety. It was as much bound to defend and protect the railway company against invalid claims of liens as against valid ones, and in the railway company's complaint in the United States District Court there is an allegation that immediately upon the filing of said liens, the railway company notified the Nettleton-Bruce-Eschbach Company and the surety company to settle or defend the same, but that they failed and refused to do so to the railway company's damage in the sum of $2,500.

■ It was also claimed that the Nettleton-Bruce Eschbach Company left the contract unfinished, and that the railway company was forced to expend in all $18,170.47 to complete the work. It is also alleged legally valid labor lien claims aggregating $7,000, upon which it was admitted suits for foreclosure had been commenced within six months after filing. So this is not a case where only plaintiff's claim was distinctly and separately considered, but a case where nearly forty thousand dollars worth of claims were involved including large sums paid by the company to complete the work, large liabilities on account of valid labor claims, and large sums incurred in protecting or defending claims, which claims the Nettleton-Bruce-Eschbach Company and its sureties had failed to defend. This court has already held in

the action of *Pankey* v. *National Surety Co., supra,* that the bond was given for the benefit of the railway company and not for the benefit of Pankey. Therefore, he was not privy to the action in the United States District Court, and was not bound by any arrangement that the parties to that action might make in regard to it. He had no right to require the railway company to sue on the bond, and, if it had failed to do so, he would not have had a cause of action on that account. In fact, he seems to have then recognized this fact as while the suit was pending in the United States District Court, he was still a litigant in the state courts claiming to recover in his own right against the surety company for the amount of his claim. There is no element of estoppel in this case. An estoppel is defined by our Code, subdivision 4, Section 798, Or. L., as follows:

"Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he shall not, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

There was nothing done by the railway company in the conduct of the case in the United States District Court, which caused Pankey to assume any different attitude in respect to his claim from that which he before occupied. He continued independently to prosecute his action against the surety company, and his right of suit upon his lien had expired even if he had one, which he never had. He was in just as good a condition, and certainly no worse after the action in the United States District Court, as he was before. We cannot tell from the record what items were in the mind of the judge of the United

States District Court when he made the finding that the "issues were in favor of plaintiff," and rendered judgment in favor of the company for the sum of $25,000, in a case where the company had claimed that it had been damaged in a much greater sum.

■ The issues as to the individual claims were not clearly defined in the pleading and were not made clear in the judgment. In such case it is competent to receive testimony to show what was *in fact* submitted to the consideration of the court. And this is what the defendant in the case at bar attempted to do by introducing testimony tending to show and, in the absence of rebuttal, showing that upon the trial of the case in the United States District Court it was agreed between the attorneys on both sides that only labor claims would be urged as an element of recovery and substantially, that no claims for material and supplies would be urged, and that as a matter of fact the alleged liens for material and supplies were not urged as a valid basis for recovery. This evidence was competent and in no way contradicts the record, but explains it. See 15 R. C. L. 1050, Section 532, where it is said:

"Ordinarily, the pleadings in a former suit when introduced in a second action will show what was within the issues and determined in the first suit, but it is a well settled general rule that extrinsic or parol evidence is admissible to show what was involved in the issues and settled by the judgment in a former action, whenever the record leaves these facts in uncertainty, provided that such evidence does not amount to a contradiction of the record of the judgment or of recitals embodied in it. Under this principle, parol evidence may be admissible in proper cases to identify the subject matter of a prior suit, to show that in a prior action of trespass a question

as to the title or the boundaries was tried and determined, or to prove that the validity of a deed was passed on in a prior suit between the same parties. So, where the record fails to show the facts of an agreement upon which a judgment of dismissal was entered, resort may be had to extrinsic evidence. Likewise where several issues are presented by the pleadings, and the record fails to show upon which in fact the judgment was rendered, it is competent to show that fact by evidence *aliunde*. Thus if in a former action the defendant interposed two different pleas and recovered a general verdict, extrinsic evidence could be admissible to show that the verdict was based on one only of these pleas, and that the matter involved in the other plea was not adjudicated."

The stipulation, under which the various claims of liens was introduced, refers to them as liens or purported liens. In the beginning, it recites the desire of all parties to avoid the expense of bringing all the various claimants personally to testify in regard to their claims, and provides that each claimant shall be presumed and held to have testified to the facts stated in his claim of lien. As plaintiff's claim did not state that he gave the five-day notice to the railway company necessary to make his lien valid, and there is no pretext that he appeared personally to testify that such notice was in fact given, the court would in any event have rejected his claim even in the absence of the agreement testified to by Mr. Groesbeck.

It is clear from the testimony that plaintiff never had a valid lien; that his invalid lien claim was not considered in the making up of the judgment in the United States District Court, and that the defendant has not collected a dollar belonging in equity to him, but on the contrary, is now the loser by reason

of being compelled . to complete its contractor's abandoned contract and to pay valid labor claims. The plaintiff has failed to prove the facts which in *Pankey* v. *National Surety Co., supra,* we suggested that it would be necessary for him to show in order to recover, and the judgment is therefore affirmed.

AFFIRMED. REHEARING DENIED.

BEAN, BROWN and BELT, JJ., concur.